[Cite as *In re J.A.W.*, 2013-Ohio-2614.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

IN THE MATTER OF: J.A.W., a.k.a. W.   :    **O P I N I O N**

          :     **CASE NO. 2013-T-0009**

Civil Appeal from the Trumbull County Court of Common Pleas, Juvenile Division, Case No. 2010 CH 21.

Judgment: Affirmed.

*Mark I. Verkhlin*, 839 Southwestern Run, Youngstown, OH 44514 (For Appellant Jeffrey Wells).

*Susan Porter Collins*, 2282 Reeves Road, N.E., Warren, OH 44483 (For Appellee Trumbull County Children Services Board).

*Rhonda L. Granitto Santha*, 6401 State Route 534, Farmington, OH 44491 (Guardian ad litem).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Jeffrey A. Wells, appeals the judgment of the Trumbull County Court of Common Pleas, Juvenile Division, terminating his parental rights concerning his son, J.A.W., a.k.a. W. Upon review of the record, the trial court's conclusions concerning the best interest of the minor child are supported by competent, credible evidence; accordingly, we must affirm the judgment.

**{¶2}** J.A.W. was born on March 5, 2010. On March 18, 2010, Trumbull County Children Services Board ("TCCSB") filed a complaint alleging J.A.W. to be abused and dependent as he tested positive for cocaine at birth. Brittany Watson, the child's natural mother, signed a voluntary placement with Trumbull County Children Services Board ("TCCSB") and was subsequently deemed to have legally abandoned the child. Guardian ad litem Rhonda Granitto Santha was appointed. Paternity testing established appellant as the biological father.

**{¶3}** On January 13, 2011, TCCSB filed a motion to grant appellant temporary custody of J.A.W. The trial court granted the motion subject to a Protective Supervision Order ("PSO"). J.A.W. was placed with appellant subject to the PSO on February 8, 2011. The agency retained voluntary temporary custody from March 3 to March 18, 2011, due to appellant's incarceration on an outstanding traffic matter.

**{¶4}** J.A.W. returned to his father on March 18, 2011. Appellant was arrested on April 12, 2011, for obstruction of official business. J.A.W. returned to agency custody on April 12, 2011, pursuant to Juv.R. 6(A)(3)—law enforcement authority.

**{¶5}** On July 8, 2011, a magistrate's decision recommended that custody of J.A.W. be returned to appellant. Prior to the trial court's adoption of the decision, appellant tested positive for cocaine. The magistrate's decision was vacated and temporary custody through TCCSB continued. Appellant was again incarcerated from December 25, 2011, to March 23, 2012.

**{¶6}** On April 6, 2012, TCCSB filed a motion for permanent custody. For cause, the agency listed appellant's ongoing legal issues, highlighting his numerous and

2

consistent periods of incarceration and his failure to abide by the PSO terms, including his failure to submit to drug testing.

{¶7} On April 10, 2012, appellant requested the agency place J.A.W. with appellant's sister and her husband, Mr. and Mrs. Drake. Following an agency home-study and a July 13, 2012 hearing, J.A.W. was placed with the Drakes; however, this placement was short lived. The Drakes returned J.A.W. to TCCSB due to appellant's disruptive conduct, including his continued failure to abide by the placement order which prohibited appellant from taking J.A.W. from the home unsupervised.

{¶8} On August 30, 2012, TCCSB filed a dependency complaint, which requested custody and alleged that appellant had been disruptive to the legal placement efforts, and as a result, J.A.W. did not have a permanent, stable home.

{¶9} The trial court held a dispositional hearing on November 1, 2012. Appellant was present during the hearing and represented by court-appointed counsel. During the hearing, the trial court heard testimony from the Drakes, the TCCSB caseworker, and the guardian ad litem. Appellant also addressed the trial court after requesting that his trial counsel withdraw from the case.

{¶10} Following the hearing—the details and findings of which are discussed at length below—the magistrate recommended permanently terminating the parental rights of Brittany Watson and appellant with respect to J.A.W. Timely objections to the magistrate's decision were filed. The trial court overruled the objections and adopted the magistrate's decision.

{¶11} Appellant asserts two assignments of error that, for ease of discussion, will be addressed in reverse order. Appellant's second assignment of error states:

3

**{¶12}** "The Trial Court committed reversible error when it denied Appellant's requests to proceed without counsel as his own attorney, thus committing per se reversible error. *State v. Reed*, 74 Ohio St.3d 534, 535, 1996-Ohio-21, 660 N.E.2d 456."

**{¶13}** Appellant argues the trial court committed per se reversible error in denying his request to act as his own counsel, which was made for the first time in the midst of the permanent custody proceeding.

**{¶14}** As appellant failed to include any error concerning the trial court's purported failure to permit him to proceed as his own counsel in his objections to the magistrate's decision, he has waived all but plain error on appeal, pursuant to Ohio Juv.R. 40(D)(3)(b)(iv).

**{¶15}** Given the severity and impact of the proceedings, parents are entitled to legal representation at all stages of child delinquency and permanent custody proceedings. R.C. 2151.352. Parents who qualify for indigency status have the right to have counsel appointed on their behalf. *Id.* "Once counsel is appointed to assist an indigent parent, he or she is counsel of record until the termination of the case or until the court finds good cause for withdrawal and takes steps to ensure the parent is not prejudiced by the loss of counsel." *In re Swingle*, 5th Dist. No. CT 2008-0008, 2008-Ohio-3314, ¶14; *see also* Juv.R. 4(F) ("[a]n attorney * * * may withdraw only with the consent of the court with good cause shown").

**{¶16}** Here, appellant exercised his rights and had counsel appointed to him after filing for indigency. Appellant's court-appointed attorney attended the hearing and cross-examined TCCSB's witnesses, eliciting testimony that appellant now uses to

4

support his first assignment of error. However, during the permanent custody hearing, in the midst of testimony from TCCSB Caseworker Kathy Heargerty, appellant made it known he wanted his court-appointed counsel to withdraw. The trial court denied the motion, explaining that the case was in the middle of its final hearing.

{¶17} Though the trial court did not permit appellant to proceed pro se, it did inquire as to why appellant made such a request and afforded appellant an opportunity to address the court. When given the opportunity to speak, appellant did not set forth any reason concerning why he wanted his counsel to withdraw in the middle of the hearing. Honoring appellant's request—i.e., requiring him to proceed immediately without representation and without a demonstration of good cause—would, in fact, have been prejudicial. We therefore cannot conclude the trial court committed plain error in continuing with the hearing, affording appellant the same court-appointed counsel who prepared for the case. Following the request, appellant's counsel continued to act on his behalf by cross-examining witnesses and arguing case points.

{¶18} Appellant's second assignment of error is without merit.

{¶19} Appellant's first assignment of error states:

{¶20} "The Trial Court committed reversible error when it overruled the Objection to the Magistrate's Decision and severed the parental rights of Appellant, in spite of the fact that there was insufficient evidence to do so pursuant to R.C. 2151.414 and relied on a report of a Guardian ad litem which was incomplete."

{¶21} In his first assignment of error, appellant asserts the trial court erred in terminating his parental rights because there is insufficient evidence to support this decision and also because the trial court relied upon an "incomplete" guardian ad litem

5

report in that the guardian ad litem allegedly failed to perform any significant investigation into the case.

{¶22} As it is a parent's basic civil right to raise his or her child, appellant—a parent defending a motion for termination of parental rights—must be afforded all procedural and substantive protections in accordance with the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *In re M.J.*, 11th Dist. 2011-A-0007, 2011-Ohio-2714, ¶16.

{¶23} However, this right is not absolute, and as held by the Ohio Supreme Court, these interests held by a parent must be subordinated to the child's interest in determining an appropriate disposition in a termination of parental rights case; thus, the pivotal inquiry is not focused on the parent's rights but rather the child's best interest. *Miller v. Miller*, 37 Ohio St.3d 71, 75 (1988); *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979); *see also In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, ¶11. ("The fundamental interest of parents is not absolute, however. Once the case reaches the disposition phase, the best interest of the child controls.") Indeed, R.C. 2151.414(C) states that "a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child."

{¶24} R.C. 2151.414 provides the two-prong analysis a court must follow in permanent custody proceedings. Pursuant to R.C. 2151.414(B)(1), a trial court may grant permanent custody if the court determines at the permanent custody hearing—by clear and convincing evidence—that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:

{¶25} (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶26} (b) The child is abandoned.

{¶27} (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶28} (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section

7

2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶29} Appellant does not dispute the applicability of subsection (d) in this case: J.A.W. has been in the temporary custody of TCCSB for at least 12 months of a consecutive 22-month period.

{¶30} Having determined that one of the four factors in R.C. 2151.414(B)(1)(a)-(d) apply, the trial court must next decide by clear and convincing evidence whether the award of permanent custody to an agency is in the child's best interest based upon a non-exclusive list of relevant factors which are set forth in R.C. 2141.414(D):

{¶31} (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶32} (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶33} (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as

8

described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶34} (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶35} (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶36} "Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Aiken*, 11th Dist. No. 2005-L-094, 2005-Ohio-6146, ¶28.

{¶37} Upon appellate review of cases involving the termination of parental rights, the civil manifest weight of the evidence standard is applied: "if the trial court's grant of permanent custody to the county is supported by some competent, credible evidence, we must affirm the court's decision." *In re J.H.*, 11th Dist. No. 2012-L-126, 2013-Ohio-1293, ¶91. Stated in relation to the trial court's standard, we must determine if there is competent, credible evidence in the record that would allow the trial court to have made its determinations by clear and convincing evidence.

{¶38} Appellant contends the trial court's decision was based upon insufficient evidence because none of the evidence presented actually related to the factors of R.C. 2151.414. The record, however, indicates otherwise, and as the trial court's conclusions are supported by competent and credible evidence that would have allowed

9

it to make its determination by clear and convincing evidence, we must affirm the judgment.

{¶39} There is ample evidence illustrating the interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents. R.C. 2151.414(D)(1). The court found, and the record supports, that J.A.W. has bonded with his foster-to-adopt family, including the foster siblings, and is thriving in his new environment. Though he is excited to see his father and cries when the visits are over, he quickly stops as soon as he returns to the car with his foster parents. Guardian ad litem Rhonda Granitto Santha testified she observed J.A.W. adapting very well in his current foster home. She noted that he is attaching to his family, especially his younger foster brother, and, if allowed to do so, would be able to make a permanent bond.

{¶40} Moreover, there is the matter of the extensive custodial history of J.A.W. as well as his need for a legally secure permanent placement, and whether that type of placement could be achieved without a grant of permanent custody to the county. R.C. 2151.414(D)(3) & (D)(4). From the time of his birth, when cocaine was found in his system, J.A.W. was placed in an agency foster home. Following a paternity establishment, J.A.W. was placed with appellant from February 8, 2011, until appellant's incarceration on March 3, 2011. J.A.W. returned to agency care from March 3 to March 18, 2011.

{¶41} J.A.W. returned to his father on March 18, 2011, though this custody period was again short lived as appellant was again arrested. J.A.W. returned to agency custody on April 12, 2011. On July 8, 2011, a magistrate's decision gave appellant custody of J.A.W.; however, prior to the trial court's review and adoption of the

decision, appellant tested positive for cocaine. The magistrate's decision was subsequently vacated and temporary custody through TCCSB continued. Appellant was again incarcerated from December 25, 2011, to March 23, 2012. On April 6, 2012, TCCSB filed a motion for permanent custody.

**{¶42}** On April 10, 2012, appellant requested the agency place J.A.W. with appellant's sister and her husband, Mr. and Mrs. Drake. Following an agency home-study and a July 13, 2012 hearing, J.A.W. was placed with the Drakes; however, this placement was short lived. The Drakes returned J.A.W. to TCCSB due to appellant's disruptive conduct. Mr. Christopher Drake testified to the nature of these disturbances, explaining that appellant was very disruptive and refused to abide by the court order; e.g., appellant attempted on numerous occasions to take his son. Mr. Drake noted appellant characterized the court order as just "a piece of paper" designed to invoke fear. Mr. Drake further testified that appellant succeeded in taking J.A.W. from the Drakes without permission on at least one occasion. Mr. Drake explained that the circumstances placed his own family in jeopardy, and they had no choice but to return J.A.W. to agency care. Appellant was again incarcerated from October 20 to October 22, 2012.

**{¶43}** Kathy Heargerty, Caseworker in the Substitute Care Department of TCCSB, characterized appellant's conduct during this period as an inability to demonstrate long-term stability and sobriety. Ms. Heargerty noted appellant's continual periods of incarceration since J.A.W.'s birth, including the fact he was being held in custody for a pending felonious assault charge at the time of the permanent custody hearing (though he was in attendance); his inability to follow the law, marked by his

11

disregard for court orders concerning his son; and his cavalier attitude towards agency rules and guidelines, illustrated by his positive drug screen in July 2011 and his outright refusal to submit to subsequent testing.

{¶44} The trial court further assessed the factors set forth in R.C. 2151.414(E), including appellant's failure to submit to drug testing, his positive drug test, his disruptive behavior during agency and court proceedings, and his defiant actions, including taking J.A.W. from the foster home without permission and without supervision. Above all, the trial court found, and the record in this case establishes, that appellant's recurring periods of incarceration render it impractical and unfeasible to provide consistent, stable care for the young child.

{¶45} Appellant additionally argues that the trial court erred in relying upon the guardian ad litem's report. Appellant argues the report was essentially incomplete because the guardian failed to interview the Drakes and failed to apprise herself as to the current state of appellant's legal matters, in contravention of Ohio's Rules of Superintendence regarding guardians ad litem, specifically Sup.R. 48(D)(13)(d) and (D)(13)(i).

{¶46} Rule 48 applies in all domestic relation and juvenile cases in the courts of common pleas where a court appoints a guardian ad litem to protect and act in the best interest of a child. Sup.R. 48(A). The rule outlines various responsibilities that the guardian ad litem shall, at a minimum, perform unless impracticable or inadvisable, in order to provide the court with relevant information and an informed recommendation regarding the child's best interest. Sup.R. 48(D)(13). One such responsibility is to meet with and interview the parties, foster parents, and other significant individuals who may

12

have relevant knowledge regarding the issues of the case. Sup.R. 48(D)(13)(d). The rule also states the guardian is to perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

{¶47} However, violations of the Rules of Superintendence do not carry the weight of the rule of law and are not grounds for reversal even if a departure from the strict provisions of the rule has occurred. *Allen v. Allen*, 11th Dist. No. 2009-T-0070, 2010-Ohio-475. Rather, "'Rules of Superintendence are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts.'" *Id.* at ¶31, quoting *State v. Singer*, 50 Ohio St.2d 103, 109-110 (1977). "'They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants.'" *Id.*, quoting *State v. Gettys*, 49 Ohio App.2d 241, 243 (1976).

{¶48} Further, any failure to directly question the Drakes is not dispositive of the guardian's efforts in this case: the guardian was present for numerous hearings, including the permanent custody hearing; reviewed agency records,; interviewed appellant; and observed J.A.W. interact with his foster family. In addition, the Drakes testified at the hearing and were available to testify regarding any matters about J.A.W. or appellant.

13

{¶49} The competent, credible evidence at the permanent custody hearing supports the trial court's determination by clear and convincing evidence that it is in the best interest of the minor child to be permanently placed in the custody of TCCSB.

{¶50} Appellant's first assignment of error is without merit.

{¶51} The judgment of the Trumbull County Court of Common Pleas, Juvenile Division, is affirmed.

CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.