[Cite as *In re C.A.*, 2014-Ohio-1550.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

IN THE MATTER OF:                    :          Case No.  13CA24
                                     :
     C.T.L.A.                        :
                                     :          DECISION AND JUDGMENT
                                     :          ENTRY
                                     :
                                     :
                                     :          **Released: 04/08/14**
_____
                              APPEARANCES:

Alisa Turner, Logan, Ohio, for Appellant.

Laina Fetherolf, Hocking County Prosecuting Attorney, and Ann Allen
McDonough, Assistant Prosecuting Attorney, Logan, Ohio, for Appellee.

Larry E. Beal, Logan, Ohio, Guardian *Ad Litem*.
_____

McFarland, J.

     **{¶1}**  Appellant, J.N., appeals the trial court's decision that awarded

permanent custody of her biological child, C.T.L.A., to appellee, South Central

Ohio Job and Family Services, formerly known as Hocking County Children

Services.  Appellant asserts that the trial court erred by failing to appoint the

guardian *ad litem* as counsel for the child and by failing to appoint independent

counsel for the child.  However, appellant failed to object to either alleged error

and, thus, we review these two errors for plain error.  Because neither alleged error

affected the outcome of the proceedings, appellant cannot show that the case at bar

is one of the extremely rare cases that warrants application of the plain error doctrine.

{¶2} Appellant also contends that the guardian *ad litem* failed to comply with his duties and, thus, was ineffective. None of the guardian *ad litem*'s alleged failures affected the outcome of the proceeding. Consequently, appellant cannot demonstrate that the guardian *ad litem*'s alleged failures require us to reverse the trial court's judgment.

{¶3} Appellant next argues that some of the trial court's factual findings are against the manifest weight of the evidence. She asserts that the court failed to consider the child's wishes. However, the court did consider the child's wishes as expressed through the guardian *ad litem*. Furthermore, the court found that the child was not competent.

{¶4} Appellant additionally argues that the trial court's finding that the child needs a legally secure permanent placement that cannot be achieved without a grant of permanent custody is against the manifest weight of the evidence. The evidence shows that Appellant is unable to provide the child with a legally secure permanent placement. Appellee was unable to locate any other appropriate legally secure permanent placements for the child. Thus, the court's finding is not against the manifest weight of the evidence.

{¶5} Appellant further contends that the court's findings under R.C. 2151.414(E)(9) and (E)(15) are against the manifest weight of the evidence. Even if they are, ample other evidence supports the trial court's permanent custody decision. Consequently, any error in considering these two factors was harmless. Accordingly, we overrule Appellant's assignments of error and affirm the trial court's judgment.

## I. FACTS

{¶ 6} On November 2, 2011, the trial court placed the then one-year-old child in Appellee's temporary custody. On November 3, 2011, Appellee filed a complaint alleging that the child is an abused, neglected, and dependent child. On January 4, 2012, the court found the child to be a dependent child and placed the child in Appellee's temporary custody.

{¶7} On August 3, 2012, Appellant was incarcerated for committing burglary, and she is a registered sex offender. Her scheduled release date is in November 2015.

{¶8} On May 29, 2013, Appellee filed a permanent custody motion. Appellant subsequently filed a motion for visitation and requested the court to deny Appellee's request for permanent custody. Appellant requested the court to keep the child in foster care and to not terminate her parental rights so that she could seek custody of the child upon her release from prison.

{¶9} On October 17, 2013, the court held a permanent custody hearing. Caseworker Stephanie McDaniel testified that Appellant initially complied with the case plan goals, until her parole was revoked for failing to check in with her parole officer and then failing to attend her drug and alcohol appointments. McDaniel stated that since August 2012, when Appellant began her term of incarceration, Appellant has not visited with the child due to difficulty in arranging visitation while she is incarcerated. McDaniel testified that the child has been in the same foster home for nearly two years and is bonded with the foster family. She agreed that "the only barrier to reunification" is that Appellant is in prison. She stated that permanent custody is in the child's best interest because Appellant and the child's father are incarcerated and there are no other appropriate family placement options. McDaniel explained that permanency was the best option because when Appellant is released from prison "there is no guarantee * * * that she could [regain custody] because there is always that chance where she could get out and do great or she could get out and have more issues."

{¶10} Appellant testified that when she is released from prison, she would like the opportunity to regain custody of her child but admitted that she would not want him placed with her immediately upon her release because she "would make sure that [she] was completely stable so [she] wouldn't fall apart again."

{¶11} The guardian *ad litem* did not file a written report but, instead, orally recommended that the trial court award Appellee permanent custody of the child. The guardian *ad litem* observed that there is no guarantee that Appellant will be able to regain custody upon her release from prison and that in the interim, the child would lack the stability of a permanent home. The guardian explained that the child, who was nearly three years old at the time of the permanent custody hearing, needs stability.

{¶12} On October 31, 2013, the court granted Appellee permanent custody of the child. The trial court found that the child had been in Appellee's temporary custody since November 2, 2011 and that the child cannot be placed with either parent within a reasonable time because both parents are incarcerated. The court noted that Appellant has not visited or maintained contact with the child since being incarcerated in August 2012. The court observed that the guardian *ad litem* believed granting Appellee permanent custody would serve the child's best interests and determined that the child "is not competent to express his wishes." The court further found that "[t]he child has not experienced secure placement with mother." The court additionally found relevant the following factors specified in R.C. 2151.414(E): (1) appellant cannot take custody of the child; (2) appellant has not been able to adequately care for the child; (3) appellant has a history of substance abuse and addiction; (4) appellant has failed to visit the child due to her

incarceration; (5) appellant is incarcerated and is expected to remain incarcerated for at least another eighteen months after the date appellee filed the permanent custody motion; and (6) "[b]ased on past history of it [sic] is foreseeable that reunification with [appellant] would result in continued dependency of the child."

## II. ASSIGNMENTS OF ERROR

{¶13} Appellant timely appealed the trial court's judgment and raises three assignments of error:

First Assignment of Error:

The trial court erred by failing to appoint legal counsel to represent the minor child.

Second Assignment of Error:

The Guardian *ad litem* (GAL) rendered ineffective assistance by failing to file a written report pursuant to R.C. 2151.414(C), and failing to inform the trial court of the express wishes of the child.

Third Assignment of Error:

The trial court erred in interpreting and applying the factors of ORC 2151.414 (D and E) to the facts of this case to determine the best interest of the minor child.

## III. ANALYSIS

## A. FAILURE TO APPOINT COUNSEL

{¶13} In her first assignment of error, Appellant argues that the trial court violated the child's due process rights by failing to appoint the guardian *ad litem* as

counsel for the child.  In her second assignment of error, Appellant asserts that the trial court erred by failing to appoint independent counsel for the child.

{¶14}  Because appellant did not request the trial court to appoint the guardian *ad litem* as counsel for the child, she forfeited her ability to claim error on appeal.  *E.g., State v. Clinkscale,* 122 Ohio St.3d 351, 2009-Ohio-2746, 911 N.E.2d 862, ¶31 (stating that a party must timely object to preserve error for appeal); *Stores Realty Co. v. City of Cleveland, Bd. of Bldg. Standards and Bldg. Appeals,* 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975) ("Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal."). However, we may recognize the alleged error if it constitutes plain error. *E.g., Clinkscale* at ¶31; *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus; *In re Etter,* 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1998). To find plain error, (1) there must be an error (*i.e.*, a deviation from a legal rule), (2) the error must be obvious, and (3) the error must have affected the outcome of the trial.  *E.g., State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶16.

{¶15}  The plain error doctrine is not favored in civil cases, and thus, the Ohio Supreme Court has set forth a strict standard for finding plain error in civil cases:

"[R]eviewing courts should proceed with the utmost caution, limiting the doctrine strictly to those extremely rare where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings."

*Goldfuss,* 79 Ohio St.3d at 121; *accord Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶43.

{¶16} In the case at bar, we do not believe that the trial court plainly erred by failing to appoint the guardian *ad litem* as counsel for the child, and even if it did, the case at bar is not one of those extremely rare cases that requires application of the plain error doctrine. Appellant has not set forth any prejudice that she suffered as a result of the trial court not appointing the guardian *ad litem* to serve in a dual capacity or explained what manifest miscarriage of justice occurred due to the lack of a dual appointment.

{¶17} We also do not believe that the trial court plainly erred by failing to appoint independent counsel for the child. "[A] child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1100, syllabus, citing R.C. 2151.352, Juv.R. 4(A), and Juv.R. 2(Y); *accord In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398. Thus, a child is not entitled to independent counsel in all juvenile court proceedings involving the termination of parental

rights. Instead, a child is entitled to independent counsel in a termination of parental rights proceeding only when "certain circumstances" exist. The *Williams* court did not explicitly state what those "circumstances" are, but it offered the following guidance for juvenile courts to follow when ascertaining if "certain circumstances" exist: "[C]ourts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the guardian *ad litem* being appointed to represent the child." *Id.* at ¶17. Furthermore, a juvenile court must appoint independent counsel for a child "when a guardian *ad litem* who is also appointed as the juvenile's attorney recommends a disposition that conflicts with the juvenile's wishes." *Id.* at ¶18; *accord C.B.* at ¶17. "Generally, the appointment of independent counsel is warranted when a child has 'repeatedly expressed a desire' to remain or be reunited with a parent but the child's guardian *ad litem* believes it is in the child's best interest that permanent custody of the child be granted to the state." *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600 through 05CA609, 2006-Ohio-1965, ¶36 (footnotes omitted) (emphasis sic). When a child lacks the maturity to express his or her wishes and nothing otherwise indicates that the child's wishes conflict with the guardian *ad litem*, then a juvenile court need not appoint counsel for the child. *In re L.W.*, 9th Dist. Summit Nos. 26861 and

26871, 2013-Ohio-5556, ¶20 (child two years old when children services agency initiated proceedings and unable to communicate wishes).

{¶18} In the case at bar, nothing in the record indicates that the child ever expressed any desire that conflicted with the guardian *ad litem*'s recommendation. The child was under three years old at the time of the permanent custody hearing, and the trial court correctly determined that the child lacked competency to express his wishes. Appellant nevertheless appears to assert that the trial court should have presumed that the child wished to remain with Appellant because some evidence exists that the child was bonded to Appellant during the times when they visited each other. Even if Appellant's assertions that the child displayed affection for her and was bonded to her are true, simply because a child is bonded to a parent, misses a parent when a parent does not attend visitations, or even expects to be returned to a parent does not mean that the child has "an affirmative desire to return to [the parent's] home and live with [the parent] on a permanent basis." *In re A.T.*, 9th Dist. Summit No. 23065, 2006-Ohio-3919, ¶61. "The desire to see one's parent does not equate to a desire to remain in the parent's household," and "'the presence of parent/child bonding is not the same thing as making a knowing choice to remain with one parent.'" *Id.*, quoting *In re M.W.,* 8th Dist. Cuyahoga No. 83390, 2005-Ohio-1302, ¶12. Thus, even if the child's actions indicate parent-child bonding, those actions are not sufficient to demonstrate that the child desires

to remain in appellant's custody.  Consequently, those actions are likewise insufficient to demonstrate a conflict between the guardian *ad litem*'s and the child's wishes, and the court was not required to appoint independent counsel for the child.

{¶19}  Appellant nonetheless argues that "certain circumstances" necessitating independent counsel exist in this case because the guardian *ad litem* did not present evidence of the child's wishes, did not "assert an inability to determine" the child's wishes, and did not submit a written report.  Appellant claims that under these circumstances, the guardian *ad litem* could not have effectively recommended what was in the child's best interests and thus, the child was entitled to independent counsel.

{¶20}  Here, the guardian *ad litem* testified at the permanent custody hearing that awarding Appellee permanent custody would be in the child's best interest. He explained that awarding permanent custody to Appellee would provide the stability the child needs now, rather than waiting for Appellant to be released from prison in two years and then waiting for her to prove her ability to properly care for the child.

{¶21}  Moreover, as another court recognized, when a child is "unable to express a position regarding custody or to assist an attorney in pursuing a particular course of action," an attorney would be able to advocate only what the attorney

believed to be in the child's best interests. *In re T.J.*, 2nd Dist. Montgomery No. 23032, 2009-Ohio-1290, ¶10. However, a guardian *ad litem* also recommends what he or she believes is in the child's best interests. Thus, an attorney appointed for a child unable to express his or her wishes would fulfill the same duty that the guardian ad litem already fulfills. Consequently, in this situation, any error in failing to appoint counsel for the child would be harmless. *Id.*, citing *In re A.S.,* 10th Dist. Franklin No. 05AP–351, 05AP–352, 2005–Ohio–5492, ¶10. ("A.S. is low-functioning, has limited communication abilities, and is unable to express her wishes as to custody. Under these circumstances, separate counsel would be of no assistance, as counsel would be unable to determine the desires of the child in order to represent her interests.").

{¶22} Accordingly, based upon the foregoing reasons, we overrule Appellant's first assignment of error.

## B. INEFFECTIVE ASSISTANCE BY GUARDIAN AD LITEM

{¶23} In her second assignment of error, Appellant contends that the guardian *ad litem* rendered ineffective assistance by failing to file a written report and by failing to inform the court of the child's wishes. Appellant argues that the guardian *ad litem* failed to comply with R.C. 2151.414(C) and Sup.R. 48, and that this failure left the trial court unable to properly determine the child's wishes.

{¶24} We first observe that Appellant never objected to the guardian *ad litem*'s failure to file a written report or to any of his other alleged failings. Thus, Appellant forfeited all but plain error. Additionally, while Appellant asserts that the guardian *ad litem* was ineffective, we observe that the guardian *ad litem* was not appointed to act as an attorney and thus we question whether an ineffective assistance claim is proper in this context. *But, see, In re T.B.*, 8th Dist. Cuyahoga No. 92781, 2009-Ohio-3878, ¶29 (applying *Strickland* standard to ineffective assistance claim against guardian *ad litem* appointed for incompetent parent). However, assuming that it is, any deficient performance that the guardian *ad litem* rendered did not affect the outcome of the proceedings.

{¶25} The purpose of a guardian *ad litem* "is to protect the interest of the child and 'assist a court in its determination of a child's best interest.'" *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶14, quoting Sup.R. 48(B)(1) and citing R.C. 2151.281(B). "[T]he guardian's role is to 'perform whatever functions are necessary to protect the best interest of the child, including, but not limited to * * * monitoring the services provided the child by the public children services agency * * * [and filing] any motions and other court papers that are in the best interest of the child.'" *Id.* at ¶14, quoting R.C. 2151.281(I). The guardian *ad litem* has "the unique role" to ensure that the trial court considers the child's best interests before reaching a custody decision. *Id.* Due to this unique

role, "the guardian *ad litem* has a statutory right to ensure that the best interests of the child are enforced and protected in the permanent-custody proceeding." *Id.*

{¶26} R.C. 2151.414(C) requires the guardian *ad litem* to submit a written report to the court before the permanent custody hearing in order "to give the court information, in addition to that elicited at the hearing, to assist it in making sound decisions concerning permanent custody placements." *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶13. Moreover, filing the report before the permanent custody hearing gives "the parties an opportunity to rebut any assertion contained in the report." *In re A.D.*, 12th Dist. Butler No. CA2011-06-100, 2011-Ohio-5979, ¶65, citing *In re James,* 10th Dist. Franklin No 03AP–33, 2003–Ohio–5208; *In re Salsgiver,* 11th Dist. Geauga No. 2002–G–2478, 2003–Ohio–1203, ¶22.

{¶27} Sup.R. 48(D) outlines the minimum duties that a guardian *ad litem* shall perform "unless impracticable or inadvisable to do so." According to the rule, the guardian *ad litem* shall (1) represent the best interest of the child for whom the guardian is appointed, (2) maintain independence, objectivity and fairness as well as the appearance of fairness in dealings with parties and professionals, both in and out of the courtroom and shall have no ex parte communications with the court regarding the merits of the case, (3) appear and participate in any hearing for which the duties of a guardian *ad litem* or any issues

substantially within a guardian *ad litem*'s duties and scope of appointment are to be addressed, and (4) shall make reasonable efforts to become informed about the facts of the case and to contact all parties.

{¶28}  "In order to provide the court with relevant information and an informed recommendation as to the child's best interest," Sup.R. 48(D)(13) requires the guardian *ad litem* to perform the following minimum duties "unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:"

> (a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;
> (b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;
> (c) Ascertain the wishes of the child;
> (d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;
> (e) Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;
> (f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;
> (g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;
> (h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and
> (i) Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

{¶29} In the case at bar, even if the guardian ad litem failed to comply with Sup.R. 48, we previously held that Sup.R. 48 does not create substantive rights. *In re E.W.*, 4th Dist. Washington No. 10CA18, 10CA19, 10CA20, 2011-Ohio-2123, ¶12; *accord In re J.A.W.,* 11th Dist. Trumbull No. 2013-T-0009, 2013-Ohio-2614, ¶47; *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶30 (stating that the Rules of Superintendence do not give rise to substantive rights, and so the filing of a guardian *ad litem*'s report is not mandatory.). "'They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants.'" *Id.*, quoting *State v. Gettys* (1976), 49 Ohio App.2d 241, 243, 360 N.E.2d 735. Consequently, "appellant does not have any substantive right to enforce under Sup.R. 48." *Id.* at ¶15.

{¶30} Additionally, even if the guardian *ad litem* did not comply with the R.C. 2151.414(C) requirement to file a written report, Appellant has not pointed to anything in the record to show that the guardian *ad litem* failed to enforce and protect the child's best interests or that the guardian's failure to file a written report affected the outcome of the proceedings. The guardian *ad litem* explained at the permanent custody hearing that he believed awarding Appellee permanent custody of the child would be in the child's best interests. He noted that Appellant would

be unable to have custody of the child until her release from prison—which was not scheduled to occur until November 2015—and asserted that keeping the child in limbo would not be in his best interests, especially at his young age.  Appellant has not explained how the guardian *ad litem*'s failure to file a written report affected her ability to defend against Appellee's permanent custody motion or how the failure impacted the trial court's decision.  Appellant could have cross-examined the guardian *ad litem* regarding his recommendation but chose not to do so.  Consequently, Appellant cannot show that any deficiency in the guardian *ad litem*'s performance affected the outcome of the proceedings.  *In re West*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶27 (concluding that mother could not establish prejudice when mother did not show what other evidence the guardian *ad litem* could have discovered that may have affected the guardian's recommendation); *In re Seitz,* 11th Dist. Trumbull No. 2002–T–97, 2003–Ohio–5218, ¶29 ("[I]t is not immediately apparent that a custodial disposition should be reversed on the basis of arguably ineffective service by the guardian *ad litem*."); In re E.M., 8th Dist. Cuyahoga No. 79249 (Nov. 8, 2001) ("' * * * [W]hen parents cannot establish prejudice arising from the misfeasance, or nonfeasance, of a guardian *ad litem*, it is harmless error.'"), quoting *In re Breslav*, 8th Dist. Cuyahoga No. 75468 (Apr. 13, 2000); *In re J.C.*, 4th Dist. Adams No. 07CA833, 2007-Ohio-3781 (determining that any error associated with guardian *ad litem*'s failure to

interview children of tender years did not affect the outcome of the proceeding); *In re R.C.*, 8th Dist. Cuyahoga No. 82453, 2003-Ohio-7062, ¶22 (concluding that appellant failed to show that trial court's decision would have been different if guardian *ad litem* had filed a written report).

{¶31} Furthermore, Appellant cannot demonstrate that any error relating to the guardian *ad litem*'s failure to advise the court of the child's wishes affected the outcome of the proceedings. All parties were well-aware that the child was barely three years old as of the October 17, 2013 permanent custody hearing. The trial court specifically determined that the child was not competent to state his wishes, and we have previously recognized that "interviews with children of tender years will generally yield information of very little or no benefit." *J.C.* at ¶14. Thus, even if the guardian *ad litem* had been able to ascertain the young child's wishes and had advised the trial court of the child's wishes, the trial court most likely would have given little or no weight to the child's wishes due to its incompetency determination.

{¶32} Accordingly, based upon the foregoing reasons, we overrule Appellant's second assignment of error.

C.  R.C. 2151.414(D) AND (E)

**{¶33}** In her third assignment of error, Appellant argues that the trial court's findings under R.C. 2151.414(D)(1)(b), (D)(1)(d), (E)(9), and (E)(15) are against the manifest weight of the evidence.

### 1. Standard of Review

**{¶34}** A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re R.S.,* 4th Dist. Highland No. 13CA22, 2013–Ohio–5569, ¶29.

> "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'"
>
> *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th ed.1990).

**{¶35}** When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court "'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'" *Eastley* at ¶20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th

Dist.2001), quoting *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting

*State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord*

*In re Pittman,* 9th Dist. No. 20894, 2002–Ohio–2208, 2002 WL 987852, ¶¶23–24.

{¶36} The essential question that we must resolve when reviewing a

permanent custody decision under the manifest weight of the evidence standard is

"whether the juvenile court's findings * * * were supported by clear and

convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895

N.E.2d 809, ¶43. "Clear and convincing evidence" is:

> "The measure or degree of proof that will produce in the mind of the trier of
> fact a firm belief or conviction as to the allegations sought to be established.
> It is intermediate, being more than a mere preponderance, but not to the
> extent of such certainty as required beyond a reasonable doubt as in criminal
> cases. It does not mean clear and unequivocal."

*In re Estate of Haynes,* 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986).

{¶37} In determining whether a trial court based its decision upon clear and

convincing evidence, "a reviewing court will examine the record to determine

whether the trier of facts had sufficient evidence before it to satisfy the requisite

degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

*Accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing

*Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and

convincing standard has been met to the satisfaction of the [trial] court, the

reviewing court must examine the record and determine if the trier of fact had

sufficient evidence before it to satisfy this burden of proof."); *In re Adoption of*

*Lay,* 25 Ohio St.3d 41, 42–43, 495 N.E.2d 9 (1986).  Cf. *In re Adoption of Masa,* 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (stating that whether a fact has been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence").  Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence.  *In re R.M.,* 4th Dist. Nos. 12CA43 and 12CA44, 2013–Ohio–3588, ¶62.

{¶38}  Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717; *accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

**{¶39}** Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). *Accord In re Christian,* 4th Dist. No. 04CA 10, 2004–Ohio–3146, 2004 WL 1367399, ¶7. As the Ohio Supreme Court long-ago explained: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record." *Trickey v. Trickey,* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

## 2. Permanent Custody Principles

**{¶40}** A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed .2d 599 (1982); *In re Murray,* 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); *accord In re D.A.,* 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. *D.A.* at ¶11. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" *In re*

*Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974).  Thus, the state may terminate parental rights when a child's best interest demands such termination.  *D.A* . at ¶11.

{¶41}  Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.  R.C. 2151.414(A)(1).  Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

> (A) To provide for the care, protection, and mental and physical development of children * * *;
> * * *
> (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.

### 3.  Permanent Custody Framework

{¶42}  R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶43}** Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest.

**{¶44}** In the case at bar, appellant does not challenge the trial court's R.C. 2151.414(B)(1)(d) finding.  Thus, we do not address it.

### 4.  Best Interest

**{¶45}** R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the

child's guardian *ad litem*, with due regard for the child's maturity; (3) the child's

custodial history; (4) the child's need for a legally secure permanent placement and

whether that type of placement can be achieved without a grant of permanent

custody to the agency; and (5) whether any factors listed under R.C.

2151.414(E)(7) to (11) apply.

{¶46} Here, Appellant challenges the trial court's lack of findings regarding

the child's wishes and its finding regarding the child's need for a legally secure

permanent placement.

### a. Child's Wishes

{¶47} R.C. 2151.414(D)(1)(b) states that the trial court shall consider the

child's wishes "as expressed directly by the child or through the child's guardian

ad litem, with due regard for the maturity of the child." The statute thus does not

require the trial court to consider the child's wishes as expressed directly by the

child in all circumstances. Instead, the statute recognizes that the trial court may

consider the child's wishes as expressed through the child's guardian ad litem.

Additionally, the statute requires the court to consider the child's maturity when

examining the child's wishes.

{¶48} In the case at bar, the trial court considered the child's wishes as

expressed through the guardian *ad litem*. Moreover, the court found that the child

was not competent to express his wishes. Thus, although the court did not consider

the child's direct wishes, it did consider his wishes as expressed through the guardian *ad litem*. Furthermore, the court explicitly noted that the child was not competent to express his wishes. Consequently, we do not agree with Appellant that the trial court failed to consider the child's wishes. *In re B.D.*, 4th Dist. Ross No. 08CA3016, 2008 WL 5044641, ¶32.

### b. Legally Secure Permanent Placement

**{¶49}** R.C. 2151.414(D)(1)(d) requires the trial court to consider "[t]he child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody to the [children services] agency." Appellant argues that the evidence fails to support the trial court's finding that the child cannot achieve a legally secure permanent placement without granting appellee permanent custody. We do not agree.

**{¶50}** The child has been in Appellee's temporary custody since he was one year old, and at the time of the permanent custody hearing, he was almost three years old. During the two years in between, Appellant was unable to provide the child with a legally secure permanent placement, mainly due to her criminal conduct and incarceration. At the time of the permanent custody hearing, Appellant's expected prison release date was November 2015. Thus, Appellant would not be able to provide the child with a legally secure permanent placement for at least two years following the date of the permanent custody hearing. Even

after her release from prison, Appellant recognized that she would not be able to immediately take custody of the child. When, if ever, Appellant would be able to provide a legally secure permanent placement for the child is unknown. The trial court was not required to deny the child the permanency that he needs, especially at a young age, in order to provide Appellant the chance to prove, upon her release from prison, that she can provide a legally secure permanent placement for the child. To deny Appellee permanent custody would only prolong the child's uncertainty. Even though the child has remained in the same foster home since Appellee acquired temporary custody, there is no guarantee that the child would remain in this same foster home until Appellant demonstrates that she can provide the child with a legally secure permanent placement. Instead, continuing the child in Appellee's temporary custody would place the child in limbo with no guarantee of a legally secure permanent placement. We do not believe that the trial court was required to experiment with the child's best interest in order to permit appellant to prove that she will be able to regain custody of the child.

> "' * * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'"

*In re Bishop* (1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (quoting *In re East* (1972), 32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346). We therefore disagree with Appellant's suggestion that the court should have considered alternate placements for the child pending Appellant's unpredictable ability to regain custody of the child.

**{¶51}** Moreover, while a court that is considering a permanent custody motion possesses the discretion to award legal custody to either parent or to any other person who files a motion requesting legal custody, R.C. 2151.353(A)(3), the statute does not require a juvenile court to consider relative placement before granting the motion for permanent custody. A juvenile court need not determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶64. Nor must "the juvenile court find by clear and convincing evidence that no suitable relative was available for placement." R.C. 2151.414 "does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.*; *In re J.K.*, 4th Dist. Ross No. 11CA3269, 2012-Ohio-214, ¶27; *In re Dyal*, Hocking App. No. 01CA11 (Aug. 9, 2001). Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best

interest.  *In re A.C.H.*, 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶44.  The

child's best interest is served by placing the child in a permanent situation that

fosters growth, stability, and security.  *In re Adoption of Ridenour*, 61 Ohio St.3d

319, 324, 574 N.E.2d 1055 (1991).  Therefore, courts are not required to favor a

relative if, after considering all the factors, it is in the child's best interest for the

agency to be granted permanent custody.  *Schaefer* at ¶64.  Consequently, the trial

court had no duty to first consider placing the child with Appellant's relatives or a

family friend before granting Appellee permanent custody.  Thus, we reject

Appellant's assertion that the court's finding that the child needed a legally secure

permanent placement that could not be achieved without granting Appellee

permanent custody is against the manifest weight of the evidence.

c. R.C. 2151.414(E)

**{¶52}**  Appellant also argues that the trial court's findings under R.C.

2151.414(E)(9) and (E)(15) are against the manifest weight of the evidence.  R.C.

2151.414(D)(5) requires a trial court to consider whether any R.C. 2151.414(E)(7)

to (11) factors apply when it evaluates the child's best interest.  Of relevance here,

R.C. 2151.414(E)(9) specifies the court shall consider whether

> [t]he parent has placed the child at substantial risk of harm two or
> more times due to alcohol or drug abuse and has rejected treatment two or
> more times or refused to participate in further treatment two or more times
> after a case plan issued pursuant to section 2151.412 of the Revised
> Code requiring treatment of the parent was journalized as part of a

dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

**{¶53}** R.C. 2151.414(E)(15) states that a court shall consider the following circumstance when reviewing whether the child cannot or should not be returned to either parent within a reasonable time:

> (15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

**{¶54}** Appellant asserts that the court's finding that R.C. 2151.414(E)(9) applies is against the manifest weight of the evidence because nothing in the record shows that she ever placed the child at substantial risk of harm. She likewise argues that the court's R.C. 2151.414(E)(15) finding is against the manifest weight of the evidence because nothing in the record shows that she ever abused or neglected the child. Even if these two findings are against the manifest weight of the evidence, the trial court's overall decision to award Appellee permanent custody is not. The record contains ample, competent and credible evidence to support the court's findings under R.C. 2151.414(D) that awarding Appellee permanent custody of the child would serve the child's best interest. Its findings under R.C. 2151.414(E)(9) and (15) are superfluous.

{¶55}  Accordingly, based upon the foregoing reasons, we overrule

Appellant's third assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.:     Concurs in Judgment and Opinion.
Harsha, J.:      Concurs in Judgment and Opinion as to Assignments of Error I and
                 III; Concurs in Judgment Only as to Assignment of Error II.


                                    For the Court,


                        BY:    _____
                               Matthew W. McFarland, Judge



                        **NOTICE TO COUNSEL**


        **Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**