[Cite as *In re A.M.*, 2014-Ohio-3811.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

IN THE MATTER OF:

| | | |
|---|---|---|
| A.M. and H.M., | : | Case No. 14CA13 |
| | : | |
| Adjudicated Dependent | : | |
| Children. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| | : | |
| | : | RELEASED 08/28/2014 |

_____

**APPEARANCES**:

Kimberly J. McGuire-Haines, Hillsboro, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, and Molly Bolek, Highland County
Assistant Prosecutor, Hillsboro, Ohio, for Appellee.

_____

Hoover, J.

{¶ 1} Appellant, T.S., appeals the trial court's judgment that awarded appellee,

Highland County Department of Job and Family Services, permanent custody of her two

biological children, A.M. and H.M. Appellant argues that clear and convincing evidence

does not support the trial court's decision. We do not agree. Therefore, we overrule

appellant's assignment of error and affirm the trial court's judgment.

I.  FACTS

{¶ 2} On September 27, 2013, appellee filed an abuse, neglect, and dependency

complaint concerning eleven-year-old H.M. and four-month-old A.M. The complaint

alleged that appellant and H.M.'s father[1] had been arrested for burglary. Appellee

---

[1] A.M.'s father has not participated in any of the proceedings involving his child, and the trial court later
determined that he abandoned her.

requested temporary custody of the two children. Appellee also filed a motion for emergency custody of the children, which the trial court granted.

{¶ 3} On November 4, 2013, appellant admitted that the children were dependent; and the trial court adjudicated the children dependent. The court dismissed the abuse and neglect allegations.

{¶ 4} On November 8, 2013, the guardian *ad litem* filed a report and recommendation. He recommended that the court place the children in appellee's temporary custody. Appellant subsequently agreed to place the children in appellee's temporary custody until March 27, 2014.

{¶ 5} On January 22, 2014, Kinship Coordinator Alisha Doak filed a letter with the court that stated in October 2013, she received a home study request for the children's maternal grandmother, V.W. Doak explained that the agency discontinued the home study "[d]ue to past history." Doak attached a November 21, 2013 letter sent to V.W. that stated: "After review of Highland County Children Services records and Clinton County Children Services records there are sufficient concerns identified that warrant us to discontinue the home study request. Specifically noted were two physical abuse investigations in 1994 listing you as the alleged perpetrator; both of these investigations were indicated." The letter further indicated that a 2005 Clinton County Children Services "home study was denied due to lack of cooperation and follow through."

{¶ 6} On February 27, 2014, appellee filed a motion to modify the disposition to permanent custody. Appellee alleged that the children cannot or should not be placed with either parent within a reasonable time and that awarding appellee permanent custody is in their best interests.

{¶ 7} On March 4, 2014, V.W. filed a motion to intervene and a motion for legal custody of the children.

{¶ 8} On April 28, 2014, the children's guardian *ad litem*, Allyce Horne, filed a report. She explained that on April 5, 2014, she visited V.W.'s home and interviewed V.W. The guardian *ad litem* reported that A.M. informed the guardian *ad litem* that A.M. wants to live with her foster family. The guardian *ad litem* recommended that the court award appellee permanent custody.

{¶ 9} On May 1, 2014, the court held the permanent custody hearing.  Before the hearing began, the court interviewed A.M. The court asked A.M. how she felt about living with her grandmother and A.M. responded: "Well, I know she wants to, but I don't think she can deal with us money wise, and I know that I don't want to be around my dad, but her sons * * * they do drugs and alcohol and smoke." The court asked her if she would want to live with her grandmother if "money wasn't an issue" and if no one else were around. A.M. responded that if that were the case, she would like to live with her grandmother. A.M. further explained, however, that she would rather live in her current foster home, because "I know if something did happen that I wouldn't end up in another foster home."

{¶ 10} A.M. advised the court that she enjoys living in the foster home and that she would be happy to be adopted by the foster family. A.M. stated that she would "be okay" if she did not see her mother or father again, but she further explained that she would like to see her grandmother and other family members in the future. A.M. informed the court that she would prefer to stay with the foster family instead of her grandmother, because the foster home does not have drugs, smoking, and alcohol.

{¶ 11} The court asked A.M. "[i]f everything was fixed at your grandma's house, and you had a choice of staying in [the foster home] and be adopted or be with your grandma, which would you * * *." The child interrupted and stated that she would "rather stay in [the foster home]."

{¶ 12} Caseworker Tonia Farley testified that she observed A.M. and H.M. in the foster home. Farley reported that A.M. "is a very happy child" and "is very comfortable there." She stated that A.M. has a good rapport with the foster family and is bonded with them. Farley explained that the younger child also is bonded with the foster family and the girls are bonded to each other.

{¶ 13} The foster mother testified that the two children have been in her home for seven months. She stated that A.M. sometimes refers to her and her husband as "mom" and "dad," and other times, she calls them by their names.

{¶ 14} The guardian *ad litem* testified that A.M. "was very adamant about wanting to live permanently with her foster parents." The guardian *ad litem* stated that she explained to A.M. that A.M. "may never see or speak to her family again," if the court granted appellee permanent custody. The guardian *ad litem* testified that A.M. "was kind of hesitant" after hearing that information, "but then very quickly said 'Well, I want to be where I'm at.' " The guardian *ad litem* further explained that A.M. "was very adamant about wanting to stay where [H.M.] was as well."

{¶ 15} The guardian *ad litem* asked A.M. if she told V.W. about appellant's substance abuse problems. A.M. indicated that she had informed her grandmother. A.M. explained that "her grandmother was too scared to do anything about it, and she was scared [appellant] wouldn't let the grandmother see them anymore."

{¶ 16} The guardian *ad litem* testified that she had considered the grandmother as a possible placement for the children, but after hearing what A.M. stated about the grandmother, "that was pretty much the end of [her] consideration of [the grandmother]." The guardian *ad litem* stated that she had concerns about placing the children in the grandmother's custody, "because her own children have had juvenile records," and she was not certain "how [the grandmother] would be able to handle other children in the home." She stated that her decision ultimately was based upon A.M.'s statement that she told the grandmother about appellant's substance abuse issues, but it was kept a secret so that the grandmother would still be able to see the children.

{¶ 17} On May 9, 2014, the court awarded appellee permanent custody of the two children. The court found that the children cannot or should not be placed with either parent within a reasonable time. With respect to appellant, the court observed that appellant was sentenced to three years in prison and will remain incarcerated until September 23, 2016, unless her motion for judicial release was granted. The court noted that appellant's motion for judicial release would not be decided until sometime after May 21, 2014. [2] The court observed that appellant "admitted to not being fit or suitable to care for her children" and "has demonstrated a lack of commitment toward her children by her actions of drug abuse, criminal activity and allowing a registered sex offender * * * to be around her child[ren] all of which is indicative of an unwillingness to provide an adequate permanent home for her children."[3]

---

[2] According to appellant, her motion for judicial release was denied, and thus, she will remain in prison until September 23, 2016.

[3] Neither of the fathers are involved in this appeal. Thus, we do not discuss the court's findings regarding the fathers.

{¶ 18} The court then considered the best interest factors. The court found (1) the children are bonded with the foster family, (2) the foster family would like to adopt the children, and (3) "A.M. definitely desires to stay in her foster home and wants to be adopted by her foster family." The court determined that A.M. was "mature enough to express her opinion" and that A.M. had impressed the court during her interview. The court thus gave A.M.'s opinion "great weight." The court additionally noted that A.M. "expressed a strong desire to remain placed in a loving home free of drug and criminal activity" and that she would like her younger sister, H.M., to remain placed with her. The court further found that the children are in need of a legally secure permanent placement that cannot be achieved without granting appellee permanent custody.

{¶ 19} The court considered placing the children with the grandmother but determined that it would not be in their best interests. The court found that V.W. could provide financially for the children but expressed concern with "her ability to adequately protect them." The court explained:

> The evidence established [V.W.] had issues with her own children who
> collectively had several juvenile court appearances. Of greatest concern is
> A.M. advising [V.W.] of [appellant]'s drug problems/activity but [V.W.]
> taking no steps to remove or protect her grandchildren from the same. On
> cross-examination [V.W.] admitted allowing A.M. to go back to
> [appellant]'s after A.M. advised of the drug activity in [appellant]'s home.
> She also admitted to knowing about [appellant]'s drug problems when
> A.M. and [appellant] lived with her but allowed [appellant] to leave with
> A.M. and took no action to protect A.M. [V.W.] also is of the opinion

[appellant] deserves a chance to raise her children despite her past drug and criminal activity. The Court is also concerned [V.W.] did not formally file for custody of her grandchildren when they were removed by Clinton County Children Services. This Court also wonders why it took filing for permanent custody before [V.W.] filed for legal custody in this action noting the children were removed September 27, 2013, but the motion of [V.W.] was not filed until March 4, 2014. Finally when A.M. was advised her grandmother had filed for custody she still indicated she wanted to remain with her foster family."

The court thus determined that it would not be in the children's best interests to be placed with V.W. and that awarding appellee permanent custody of the children would serve their best interests. This appeal followed.

## II.  ASSIGNMENT OF ERROR

{¶ 20} Appellant raises one assignment of error.

THE TRIAL COURT ERRED IN FINDING BY CLEAR AND
CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTERESTS
OF A.M. AND H.M. TO TERMINATE THE PARENTAL RIGHTS OF
THE APPELLANT/MOTHER, AND TO PLACE THE MINOR
CHILDREN IN THE PERMANENT CUSTODY OF THE AGENCY
INSTEAD OF PLACING THEM IN THE LEGAL CUSTODY OF THE
MATERNAL GRANDMOTHER.

## III.  ANALYSIS

### A.

Standard of Review

{¶ 21} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re M.H.,* 4th Dist. Vinton No. 11CA683, 2011–Ohio–5140, ¶ 29; *In re A.S.,* 4th Dist. Athens Nos. 10CA16, 10CA17, 10CA18, 2010–Ohio–4873, ¶ 7.

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 22} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Id*. at ¶ 20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d

541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).
*Accord In re Pittman,* 9th Dist. Summit No. 20894, 2002–Ohio–2208, ¶¶ 23–24.

{¶ 23} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is: "[T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes,* 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). *Accord In re Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." (Citations omitted.) *In re R.M.,* 2013–Ohio–3588, 997 N.E.2d 169, ¶ 55 (4th Dist).

{¶ 24} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.,* quoting *Martin* at 175; *accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 25} Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. As the *Eastley* court explained:

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jur.3d, Appellate Review, § 60, at 191–192 (1978).

1.

Permanent Custody Principles

{¶ 26} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re D.A.,* 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829, ¶¶ 8-9. A parent's rights, however, are not absolute. *In re D.A.* at ¶ 11. Rather, " 'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974). Thus, the state may terminate parental rights when a child's best interest demands such termination. *In re D.A.* at ¶ 11.

{¶ 27} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. *Id.* Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151, as set forth in R.C. 2151.01:

> (A) To provide for the care, protection, and mental and physical
>
> development of children * * * whenever possible, in a family

environment, separating the child from the child's parents only when

necessary for the child's welfare or in the interests of public safety;

(B) To provide judicial procedures through which Chapters 2151. and

2152. of the Revised Code are executed and enforced, and in which the

parties are assured of a fair hearing, and their constitutional and other legal

rights are recognized and enforced.

2.

Permanent Custody Framework

{¶ 28} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a

child to a children services agency if the court determines, by clear and convincing

evidence, that the child's best interest would be served by the award of permanent

custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary

custody of one or more public children services agencies or private child

placing agencies for twelve or more months of a consecutive twenty-two-

month period, or has not been in the temporary custody of one or more

public children services agencies or private child placing agencies for

twelve or more months of a consecutive twenty-two-month period if, as

described in division (D)(1) of section 2151.413 of the Revised Code, the

child was previously in the temporary custody of an equivalent agency in

another state, and the child cannot be placed with either of the child's

parents within a reasonable time or should not be placed with the child's

parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are

able to take permanent custody.

(d) The child has been in the temporary custody of one or more public

children services agencies or private child placing agencies for twelve or

more months of a consecutive twenty-two-month period, or the child has

been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period and, as described in division (D)(1)

of section 2151.413 of the Revised Code, the child was previously in the

temporary custody of an equivalent agency in another state.

{¶ 29} Thus, before a trial court may award a children services agency permanent

custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1)

applies, and (2) that awarding the children services agency permanent custody would

further the child's best interests.

{¶ 30} In the case at bar, appellant does not specifically challenge the trial court's

R.C. 2151.414(B)(1) finding. Therefore, we do not address it.  Instead, appellant argues

that the evidence fails to show that awarding appellee permanent custody would serve the

children's best interests. She contends that clear and convincing evidence does not

support the trial court's finding that terminating her parental rights would serve the

children's best interests. Appellant argues that placing the children in the grandmother's

legal custody would be in their best interests.

B.

Best Interest

{¶ 31} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶ 32} In the case at bar, clear and convincing evidence supports the trial court's finding that awarding appellee permanent custody is in the children's best interests. The evidence shows that the children share a bond with the foster family and with each other. The children also have positive interactions with the foster family. The evidence further shows that the children—especially A.M.—do not have a positive relationship with appellant. Appellant—the children's mother—is incarcerated and will be until September 2016. A.M. adamantly stated that she did not want to live with her mother, and she did not even want to see her mother at the time of the permanent custody hearing. Clearly, this is not a sign of a positive mother-daughter relationship. Moreover, A.M.'s interview with the court reveals that there is a level of stress associated with her relationship with her grandmother. A.M. indicated that her grandmother knew about appellant's drug abuse but did not want to report it or take action on it for fear of being unable to see the

grandchildren. A.M. further reported that she had concerns about others using drugs and alcohol in her grandmother's home, but she had no such concerns in the foster home. In short, the evidence clearly and convincingly shows that A.M. shares a much more positive relationship with her foster family than with appellant or her grandmother. H.M. is a young child and has had little interaction with appellant or the grandmother.

{¶ 33} With respect to the children's wishes, the evidence shows that H.M. was barely one-year-old at the time of the permanent custody hearing and unable to verbalize her wishes. A.M., on the other hand, appeared extremely vocal about her wishes. A.M. advised the court and the guardian *ad litem* that she wants to remain in the foster home and would like to be adopted by the foster family. The trial court afforded A.M.'s opinion "great weight." Additionally, the guardian *ad litem* recommended that the court award appellee permanent custody.

{¶ 34} With respect to the children's custodial history, the evidence shows that they have been in the same foster home since their removal from appellant's care. A.M. had previously been in the custody of another children's services agency.

{¶ 35} The evidence shows that the children need a legally secure permanent placement that cannot be achieved without granting appellee permanent custody. Appellant is incarcerated and obviously unable to provide the children with a legally secure permanent placement. Appellee explored placing the children with the grandmother but did not deem the grandmother suitable to care for the children. As the court explained: "Of greatest concern is A.M. advising [the grandmother] of [appellant]'s drug problems/activity but [the grandmother] taking no steps to remove or protect [the children]." The guardian *ad litem* stated that she had concerns about the

grandmother's ability to protect the children due to the grandmother's history raising her own children. Appellee was unable to locate any other viable placement options. Thus, the evidence supports a finding that the children need a legally secure permanent placement that cannot be achieved without granting appellee permanent custody.

{¶ 36} Considering all of the foregoing factors as a whole, we cannot conclude that the trial court's finding that terminating appellant's parental rights is against the manifest weight of the evidence. Moreover, the court's finding that awarding the grandmother legal custody of the children would not serve their best interests is not against the manifest weight of the evidence.

{¶ 37} We further observe that the trial court was not required to consider relative placement before awarding appellee permanent custody. *E.g., In re C.T.L.A.*, 4th Dist. Hocking No. 13CA24, 2014-Ohio-1550, ¶ 52. A juvenile court need not determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option." *In re Schaefer,* 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶ 64. Nor must "the juvenile court find by clear and convincing evidence that no suitable relative was available for placement." *Id.* R.C. 2151.414 "does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.; In re J.K.,* 4th Dist. Ross No. 11CA3269, 2012–Ohio–214, ¶ 27; *In re Dyal,* 4th Dist. Hocking No. 01CA11, 2001 WL 925379, * 4 (Aug. 9, 2001). Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best interest. *In re A.C.H.,* 4th Dist. Gallia No. 11CA2, 2011–Ohio–5595, ¶ 44. The child's best interest is served by placing

the child in a permanent situation that fosters growth, stability, and security. *In re Adoption of Ridenour,* 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991). Therefore, courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *Schaefer* at ¶ 64.

{¶ 38} In the case at bar, the trial court considered whether placing the children with the grandmother would be in their best interests and found that it would not. The court offered a logical rationale for rejecting the grandmother's request for legal custody of the children. The court explained that the grandmother failed to protect A.M. from appellant's drug problems and failed to take any steps to remove A.M. from appellant's care, despite A.M. informing the grandmother of appellant's drug problems. The court further observed that the grandmother believed that appellant, who has a history of drug and criminal activity, deserved another chance to raise her children upon her release from prison. The court also found relevant the grandmother's failure to seek custody of appellant's children when Clinton County Children Services had removed them from appellant's care. The court could have concluded that placing the children in the grandmother's custody would not have led to a stable, safe, and secure life for the children, which is obviously what A.M. desires for herself and her little sister.

## IV.  CONCLUSION

{¶ 39} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and McFarland, J.: Concur in Judgment and Opinion.


By:_____
                              Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.