[Cite as *In re M.B.*, 2015-Ohio-5329.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | Case Nos. 15CA5, 15CA6, 15CA7, |
| | : | 15CA8, 15CA9, 15CA10 & 15CA11 |
| M.B., C.B.-1, C.B.-2, H.B., C.B.-3, | : | |
| T.B. and C.B.-4 | : | DECISION AND |
| | : | JUDGMENT ENTRY |
| | : | |
| | : | **Released: 12/10/15** |

_____
APPEARANCES:

Jesse A. Atkins, Columbus, Ohio, for Appellant.

Jason W. Tonn, Circleville, Ohio, for Appellee.
_____

McFarland, A.J.

{¶1} This is an appeal of the Pickaway County Common Pleas Court's decision awarding permanent custody of Appellant M.B.'s seven children to Pickaway County Job and Family Services. M.B. argues that the trial court's findings are against the manifest weight of the evidence. He asserts that the Appellee agency failed to prove by clear and convincing evidence that it would be in the children's best interest to destroy the parent-child bond he shared with his children. M.B. also contends that the trial court erred in finding that he could not provide a legally secure permanent placement when it failed to consider his overall progress on his case plan and instead focused on his difficulty establishing permanent housing. However, the evidence shows that M.B. had little, if any,

interaction with his children and made little progress on his case plan due to significant cognitive deficiencies. Thus, the trial court's findings are not against the manifest weight of the evidence. Accordingly, we overrule Appellant's assignment of error and affirm the trial court's judgment.

## I. FACTS

{¶2} In July 2013 officers with the Circleville Police Department responded to a report of a van trespassing in the parking lot of a local business. Officers approached and made contact with Appellant M.B. and the children's mother, L.B. A seven-month-old infant wearing only a soiled diaper was in a car seat in the back of the van crying and coughing. The van was very dirty with trash and dirty clothing lying about and smelled very badly of urine and feces.

{¶3} The infant was very skinny with visible tendons and ribs. He had dirt caked under his neck and covering his legs and feet. His diaper was very full and did not appear to have been changed in quite some time. Despite the heat, the infant was not sweating. When an officer asked what they were feeding the infant, L.B. stated that they were feeding him a mixture of soda pop and dehydrated milk. The officers took a small bottle from the van, rinsed it, and filled it with bottled water from their cruiser. The infant drank eagerly from the bottle.

{¶4} Due to the infant's malnourished state and the fact that he was not sweating despite the hot weather, the officers contacted Circleville EMS. The

infant was initially transported to Berger Hospital and then transferred to

Children's Hospital. M.B. was convicted of child endangering in violation of R.C.

2919.22. The infant was placed in Appellee's temporary custody.

{¶5} Appellee learned that the couple had five other children who were

living with M.B.'s parents. These children were also transported to Berger

Hospital for medical evaluations. The children were extremely disheveled, dirty,

and had severe head lice infestations. They arrived at the hospital barefooted. The

children had unattended medical needs and serious dental problems.

{¶6} Appellee filed complaints in July 2013 alleging that the children were

dependent and/or neglected. Initially the remaining five children were placed in

the temporary custody of M.B.'s parents, the children's paternal grandparents.

However, that placement was later determined inappropriate due to the conditions

of the home and the emotional instability of a resident and Appellee was awarded

temporary custody of all of the children. A seventh child was born to L.B. and

M.B. in April 2014 and the newborn was immediately placed in the temporary

custody of Appellee. All seven children were placed in foster care and

experienced significant improvement in their health and well-being.

{¶7} Appellee developed case plans for M.B. and L.B. with the goal of

reunification of the children with their parents. Both parents were to have mental

health assessments and parenting classes. From the assessment, L.B. was found to

have significant cognitive delays and was diagnosed with adjustment disorder with depressed mood and mild mental retardation. Although she had a strong desire to parent her children, it was determined that cognitively she lacks the ability to use effective decision-making skills on a consistent basis and is unable to internalize or generalize information gained through previous parent training interventions. Because her parenting difficulties stem from her cognitive deficits, which change little in adulthood, it was determined that it was unlikely that therapeutic interventions would significantly improve her parenting abilities. Thus, the prognosis for her ability to assume primary care of her seven children was viewed as very poor. Counseling services and assistance through the Board of Developmental Disabilities were provided to L.B. but this intervention did not result in any improvement in L.B.'s ability to attain the case plan goals.

{¶8} M.B. was also required to have a mental health assessment, including a full psychological evaluation. Results from M.B.'s assessments indicated that he was also functioning in the mild mental retardation range of intelligence. While M.B. could benefit from individual counseling to help him use positive coping skills and develop basic independence skills, the assessment concluded that his limited cognitive abilities made it unlikely that he would be able to independently and safely parent his children without significant, long-term supervision and support from others. A review of M.B.'s history showed that he has held multiple

odd jobs, but struggles to maintain long-term employment and has been unable to meet the financial needs of his children or provide them with independent housing or other adequate permanent housing. Appellee determined that M.B. had failed to make any meaningful progress on his case plan.

{¶9} Witnesses for Appellee testified that they observed the supervised visitation M.B. and L.B. had with their children. During these scheduled visitations, M.B. and L.B. exhibited little or no interaction with their children. L.B. limited her interaction to her youngest child and did not acknowledge the other children when they arrived. M.B. limited his interaction to the two youngest children. M.B. started visits well but would soon begin to pace, check his phone, and leave the room to talk on his phone. Neither parent responded well to parenting coaching from Appellee or the guardian ad litem during the visits. The visits never progressed to a level where unsupervised visits could be considered due to M.B.'s erratic behavior and L.B.'s inability to interact adequately with the children.

{¶10} Appellee considered the possibility of relative placement for the children rather than foster care, but found no viable options. The paternal grandparents had inadequate, overcrowded living space, poor health conditions, additional relatives living with them who expressed hostility towards the children, a lock on the refrigerator door to prevent the children from accessing food, and

were unwilling to following court orders. The maternal grandparents had health issues that prevented them from adequately caring for the children and the maternal grandmother had a history of neglect allegations concerning her own children. None of the aunts or uncles was appropriate or willing to care for the children.

{¶11} Because of the children's ages and cognitive abilities, they were unable to express their wishes concerning their care and custody.

{¶12} Appellee filed a motion for permanent custody in October 2014. The trial court held a hearing in January 2015 and granted Appellee permanent custody. M.B. appealed.

## II. ASSIGNMENT OF ERROR

{¶13} Appellant raises one assignment of error for our review:

"The lower court erred in granting permanent custody to the Pickaway County Department of Jobs and Family Services because the agency failed to prove its case by clear and convincing evidence as required by R.C. Section 2151.414(B)(1) and the holding was not supported by the manifest weight of the evidence."

## III. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

{¶14} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence.

*In re M.H.,* 4th Dist. Vinton No. 11CA683, 2011–Ohio–5140, ¶ 29; *In re A.S.,* 4th

Dist. Athens Nos. 10CA16, 10CA17, 10CA18, 2010–Ohio–4873, ¶ 7.

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶15} When an appellate court reviews whether a trial court's permanent

custody decision is against the manifest weight of the evidence, the court "weighs

the evidence and all reasonable inferences, considers the credibility of witnesses

and determines whether in resolving conflicts in the evidence, the [finder of fact]

clearly lost its way and created such a manifest miscarriage of justice that the

[judgment] must be reversed and a new trial ordered." *Id.* at ¶ 20. *Accord In re*

*Pittman,* 9th Dist. Summit No. 20894, 2002–Ohio–2208, ¶¶ 23–24.

{¶16} In a permanent custody case, the ultimate question for a reviewing

court is "whether the juvenile court's findings * * * were supported by clear and

convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895

N.E.2d 809, ¶ 43. "Clear and convincing evidence" is:

> [T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to

be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal. *In re Estate of Haynes,* 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶17}  In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). *Accord In re Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.").  "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." (Citations omitted.) *In re R.M.,* 2013–Ohio–3588, 997 N.E.2d 169, ¶ 55 (4th Dist.).

{¶18} After the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest

miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin* at 175.  A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.,* quoting *Martin* at 175; *accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶19} Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations.  As the *Eastley* court explained:

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jur.3d, Appellate Review, Section 60, at 191–192 (1978).

### B. PERMANENT CUSTODY PRINCIPLES

{¶20} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71

L.Ed.2d 599 (1982); *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169

(1990); *accord In re D.A.,* 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829.

A parent's rights, however, are not absolute. *In re D.A.* at ¶ 11.  Rather, " 'it is

plain that the natural rights of a parent * * * are always subject to the ultimate

welfare of the child, which is the polestar or controlling principle to be

observed.' " *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979),

quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974).  Thus, the state may

terminate parental rights when a child's best interest demands such termination. *In*

*re D.A.* at ¶ 11.

{¶21} Before a court may award a children services agency permanent

custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The

primary purpose of the hearing is to allow the court to determine whether the

child's best interests would be served by permanently terminating the parental

relationship and by awarding permanent custody to the agency. *Id.*  Additionally,

when considering whether to grant a children services agency permanent custody,

a trial court should consider the underlying purposes of R.C. Chapter 2151, as set

forth in R.C. 2151.01:

> (A) To provide for the care, protection, and mental and physical development of children * * * whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety;

(B) To provide judicial procedures through which Chapters 2151 and 2152 of the Revised Code are executed and enforced, and in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced.

## C. PERMANENT CUSTODY FRAMEWORK

{¶22} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code,

the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶23} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶24} In the case at bar, M.B. does not challenge the trial court's R.C. 2151.414(B)(1)(d) finding. Therefore, we do not address it. Instead, M.B. focuses his argument on the trial court's best interest determination.

### D. BEST INTEREST

{¶25} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and

whether that type of placement can be achieved without a grant of permanent

custody to the agency; and (5) whether any factors listed under R.C.

2151.414(E)(7) to (11) apply. "In a best-interest analysis under R.C. 2151.414(D),

a court must consider 'all relevant factors,' including five enumerated statutory

factors * * *. No one element is given greater weight or heightened significance."

*In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, ¶ 57, citing *In re*

*Schaefer,* 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶ 56.

### E. M.B.'S APPEAL

{¶26} In the case at bar, the only aspect of the trial court's decision M.B.

challenges is whether the trial court properly evaluated the relevant factors in

determining the best interests of the children. Specifically, he argues that the trial

court failed to properly consider his interaction and interrelationship with the

children, a factor set forth in R.C. 2151.414(D)(1)(a), and it erred in its evaluation

of R.C. 2151.414(D)(1)(d) concerning whether a legally secure permanent

placement for the children could be achieved without a grant of permanent custody

to the agency.

{¶27} As to the level of interaction he had with his children, he claims that

evidence of the supervised visitation sessions shows that the children recognized

him as their father and sought his attention. He refers to his testimony at the

permanent custody hearing where he stated that he completed parenting classes and

attended visitation sessions. However, he also testified that he heard the other witnesses' testimony about the visitation sessions and their testimony was "all pretty accurate" as well.

{¶28} With respect to the children's interaction and interrelationship with M.B., the court evaluated this factor and found that the testimony presented by Appellee and the guardian ad litem about the overall interaction between the children and the parent was minimal:

> "That evidence indicated that mother did not engage with any of the children, except the newborn child * * *. Father had little engagement and became distracted by outside influences during the visits. Father also was not receptive to parental coaching and instruction but was resistant to such. Visitations were described by all witnesses as chaotic in nature."

The court's evaluation of this evidence is accurate and its findings are not against the manifest weight of the evidence. The record shows that several witnesses testified about M.B.'s behavior and lack of interest at the visitations. Moreover, as previously discussed, M.B. conceded that the testimony of the other witnesses was "all pretty accurate." Consequently, we do not agree with M.B.'s claim that the trial court failed to consider his interaction and interrelationship with his children in its best interest analysis.

{¶29} As to M.B.'s second contention concerning the permanent placement factor listed in subsection (D)(1)(d), he claims to have made noticeable progress in achieving his case plan. He argues that the trial court focused too much of its

attention on his lack of permanent housing. However, the evidence M.B. refers to in the record shows only that he continued to work towards his case plan goals, not that he has made any meaningful progress. He testified that he plans to get a job and has been actively searching for employment. However, he stated that his search efforts have been frustrated because he allowed his driver's license to expire and must rely on his father for transportation. He testified that he wants to get his life back on track, get a permanent full-time job, and eventually save money for a house, but he had not yet achieved those goals. Because he has employment goals and plans to eventually obtain housing, M.B. claims that the trial court erred in finding that he could not achieve stable housing that would be adequate for his children.

{¶30} In addressing the children's need for a legally secure permanent placement, the trial court noted that Appellee had filed a motion for permanent custody because the children had been in the custody of the agency for more than twelve months over a consecutive twenty-two month period and it would be in the best interest of the children to grant permanent custody to the agency. See R.C. 2151.414(B)(1)(a). The trial court found that the goal of the Appellee was to reunify the children with their parents and that the case plan to achieve this goal was clear and understandable. However, the trial court found that the clear and convincing evidence presented in the case showed that the parents' significant

cognitive limitations and their inability to process and implement appropriate parenting skills taught to them meant that the children would not be in a secure placement if permanently returned to them. Evidence presented at the hearing showed that the children "would be at risk of harm if left to be raised by the parents." M.B. presented no psychological report to contradict Appellee's evidence concerning M.B.'s cognitive deficiencies.

{¶31} Additionally, the court found that there was clear and convincing evidence that "both parents would need significant, intensive ongoing support of others to be able to provide for the appropriate supervision and care of [their children] to assure [their] safety and well-being" and there was no evidence that either L.B.'s or M.B.'s extended family was capable or willing to adequately support them in their parenting efforts. Moreover, the trial court found that there was no evidence that a social service agency could provide this type of intensive supportive services.

{¶32} Based upon our review of the record, we find that the trial court's determination that the children's need for a legally secure permanent placement could not be achieved without a grant of permanent custody to the Appellee was not against the manifest weight of the evidence. The trial court was not required to deny the children the permanency they need, especially given their young ages and needs, in order to provide M.B. additional chances to achieve the employment and

housing goals in his case plan. This is particularly true here where the cognitive deficiencies that he experiences are not known to improve or change over time with intervention. To deny Appellee permanent custody would only prolong these children's uncertainty. "We do not believe that the trial court was required to experiment with the [children's] best interest in order to permit appellant to prove that [he] will be able to regain custody * * *" *In the Matter of C.T.L.A.,* 4th Dist. Hocking No. 13CA24, 2014 Ohio 1550, ¶ 51 citing *In re Bishop,* 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (1987)("The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm."). Thus, we reject M.B.'s assertion that the trial court erred in analyzing the permanent placement factor of the best interest analysis.

{¶33} Accordingly, for the foregoing reasons, we overrule M.B.'s sole assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court,


BY:      _____
            Matthew W. McFarland,
            Administrative Judge



**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**